ORIGINAL



1  JEFFREY C. KRAUSE (SBN 94053)
ERIC D. GOLDBERG (SBN 157544)
2  STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
3  1901 Avenue of the Stars
12th Floor
4  Los Angeles, CA 90067
Telephone: (310) 228-5600
5  Telecopy: (310) 228-5788

6  Attorneys for Secured Creditor
CapitalSource Finance LLC

7

FILED

NOV - 5 2007

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

ENTERED

NOV -5 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
                    Deputy Clerk

8              **UNITED STATES BANKRUPTCY COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10                    **LOS ANGELES DIVISION**

11  In re                          )  Case No.  2:07-19705-BB
                                   )
12  BROTMAN MEDICAL CENTER, INC.   )  Chapter 11
                                   )
13                                 )  **INTERIM ORDER (1) AUTHORIZING**
                                   )  **DEBTOR-IN-POSSESSION TO OBTAIN**
14                                 )  **POST-PETITION FINANCING;**
                                   )  **(2) GRANTING LIENS, SECURITY**
15              Debtor.            )  **INTERESTS AND SUPERPRIORITY**
                                   )  **STATUS; (3) AUTHORIZING USE OF**
16                                 )  **CASH COLLATERAL; (4) PROVIDING**
                                   )  **ADEQUATE PROTECTION;**
17                                 )  **(5) SCHEDULING A FINAL HEARING;**
                                   )  **AND (6) MODIFYING THE AUTOMATIC**
18                                 )  **STAY**
                                   )
19                                 )  DATE:    November 1, 2007
                                   )  TIME:    10:00 a.m.
20                                 )  PLACE:   Courtroom 1475
                                   )           255 E. Temple St.
21                                 )           Los Angeles, CA  90012

22

23      AT LOS ANGELES CALIFORNIA IN THIS DISTRICT ON THIS 5th DAY OF

24  NOVEMBER, 2007.

25          This matter came before the Court on the "Emergency Motion Pursuant to

26  General Order 02-02 For Order: (1) Authorizing Debtor and Debtor in Possession to Obtain

27  Postpetition Financing With Priority Over Administrative Expenses and Secured by Senior

28  Liens on Property of the Estate; (2) Authorizing Debtor and Debtor in Possession to Use

1  Cash Collateral; and (3) Scheduling a Final Hearing Thereon; Memorandum of Points and

2  Authorities in Support Thereof;" dated October 25, 2007 (the **"DIP Financing Motion"**) of

3  Brotman Medical Center, Inc. (the **"Debtor"**) for, <u>inter alia</u>, an interim order (the **"Interim**

4  **Financing Order"**): (1) authorizing the Debtor to obtain interim post-petition financing and

5  other extensions of credit from CapitalSource Finance LLC (**"CapitalSource"** and, in its

6  capacity as post-petition lender hereunder, together with its successors and assigns in

7  such capacity, **"DIP Lender"**); (2) granting security interests and liens and according

8  superpriority claim status in favor of DIP Lender pursuant to Bankruptcy Code section 364;

9  (3) authorizing the Debtor to use cash collateral of Pre-petition Lender (as hereinafter

10  defined) pursuant to Bankruptcy Code section 363; (4) providing adequate protection to

11  Pre-Petition Lender pursuant to Bankruptcy Code sections 361, 363 and 364;

12  (5) scheduling and approving the form and method of notice for a final hearing pursuant to

13  Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended,

14  the **"Bankruptcy Rules"**) and Rules 4001-2 and 9013-1 of the Local Rules for the

15  Bankruptcy Court for the Central District of California (**"Local Rules"**); and (6) granting

16  related relief, including modification of the automatic stay pursuant to Bankruptcy Code

17  section 362.

18  Having reviewed the DIP Financing Motion, the Declaration of Michael Lane

19  in Support of Emergency First Day Motions, and all matters brought to the Court's attention

20  at the preliminary hearing (the **"Interim Hearing"**), which was held on November 1, 2007

21  pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), and after due deliberation and

22  consideration, the Court makes the following findings of fact and conclusions of law:

23  **THE COURT HEREBY FINDS AND DETERMINES AS FOLLOWS:**

24  A.      On October 25, 2007 (the **"Petition Date"**) the Debtor filed a voluntary

25  petition with this Court for relief under chapter 11 of the Bankruptcy Code commencing this

26  chapter 11 case (the **"Chapter 11 Case"**).

27  B.      The Debtor has retained possession of its property, and continues the

28  operation and management of its businesses as debtor-in-possession pursuant to

-2-

465922v3

1    Bankruptcy Code sections 1107 and 1108.  No trustee, examiner, Official Committee of

2    Unsecured Creditors or any other committee (each, a **"Committee"**) has been appointed in

3    the Chapter 11 Case.

4           C.      The Court has jurisdiction over the Chapter 11 Case, the parties and

5    the Debtor's property pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding

6    pursuant to 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Case and the DIP Financing

7    Motion is proper under 28 U.S.C. §§ 1408 and 1409.

8           D.      Prior to the Petition Date, CapitalSource made certain loans and other

9    financial accommodations available to the Debtor pursuant to that certain Revolving Credit,

10    Term Loan and Security Agreement, dated as of August 31, 2005 (as at any time amended,

11    modified or supplemented, the **"Pre-Petition Loan Agreement"**), by and among

12    CapitalSource (in such capacity, together with its successors and assigns in such capacity,

13    **"Pre-Petition Lender"**) and the Debtor.  Southern California Spine Institute LLC (**"SCSI"**),

14    the membership interests of which are owned by Debtor, is a co-borrower under the Pre-

15    Petition Loan Agreement and is jointly and severally liable for all sums due to Pre-Petition

16    Lender.  The Pre-Petition Loan Agreement, together with other agreements, instruments

17    and other documents executed or delivered in connection therewith (as at any time

18    amended, modified or supplemented), are referred to collectively as the **"Pre-Petition**

19    **Loan Documents."**

20           E.      Without prejudice to the rights of any other party (but subject to the

21    limitations thereon described below in paragraph 22), the Debtor represents, stipulates,

22    acknowledges and agrees to the following facts:

23           (1)      As of the close of business on October 25, 2007, the

24           Debtor was indebted to Pre-Petition Lender under the Pre-Petition Loan

25           Documents in the aggregate principal amount of $18,935,151.18 (such

26           principal amount, together with all interest, fees, costs, expenses, including

27           attorneys' fees, and other amounts heretofore or hereafter accruing thereon

28           or at any time chargeable to the Debtor in connection with the Pre-Petition

-3-

465922v3

1    Loan Documents, including the default interest and noncompliance fees

2    described in Paragraph E.2 below, is collectively referred to herein as, the

3    **"Pre-Petition Debt"**).

4         (2)    The Debtor initially defaulted under the Pre-Petition Loan

5    Documents on September 30, 2005 and has been in default thereunder at all

6    times since September 30, 2005.  Based on the Debtor's defaults, Pre-

7    Petition Lender has the right to charge to the Debtor interest at the Default

8    Rate of Interest (as defined in section 3.5 of the Pre-Petition Loan

9    Agreement) and a non-compliance fee (as set forth in section 9.1(a) of the

10   Pre-Petition Loan Agreement), in each case retroactively to September 30,

11   2005.  Pre-Petition Lender charged said sums prior to the Petition Date and

12   the Debtor represents, stipulates, acknowledges and agrees that the total

13   amount of Default Interest and Noncompliance Fees due and owing as of the

14   Petition Date was $8,276,242.70.

15        (3)    The Pre-Petition Debt is (i) legal, valid, binding and

16   enforceable against the Debtor; and (ii) not subject to any contest, objection,

17   recoupment, defense, counterclaim, offset, claim of subordination, claim of re-

18   characterization, claim of avoidance of any nature, attack or challenge under

19   the Bankruptcy Code, other applicable non-bankruptcy law or otherwise.

20        (4)    As security for the payment of the Pre-Petition Debt, the

21   Debtor granted to Pre-Petition Lender, pursuant to the Pre-Petition Loan

22   Documents, security interests in and liens upon all or substantially all of its

23   tangible and intangible personal and real property, wherever located and

24   whether now owned or hereafter arising, that was acquired by the Debtor

25   prior to the Petition Date (collectively, the **"Pre-Petition Lender Liens"**),

26   including, without limitation, all of its accounts, accounts receivable, inventory,

27   equipment, fixtures, general intangibles, chattel paper, contract rights,

28   permits, real estate, tax refunds, insurance proceeds, documents,

-4-

instruments, investment property, deposit accounts, books and records and other collateral, all as more fully described in the Pre-Petition Loan Documents (all such personal and real property, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, being hereinafter referred to as, the **"Pre-Petition Lender Collateral"**).

(5)     The security interests and liens granted by the Debtor to Pre-Petition Lender in the Pre-Petition Lender Collateral are legal, valid, enforceable, non-avoidable and properly perfected security interests in and liens upon the Pre-Petition Lender Collateral and, as of the Petition Date and without giving effect to this Interim Financing Order, the Debtor is not aware of any liens or security interests having priority over the liens and security interests of Pre-Petition Lender, other than the security interests or lessor's interests disclosed in Exhibit "A" attached hereto and incorporated herein by this reference (the **"Permitted Encumbrances"**).

(6)     The liens and security interests granted by Debtor to the Pre-Petition Lender in the Pre-Petition Lender Collateral were granted for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans secured thereby.

(7)     As of the Petition Date, the value of the Pre-Petition Lender Collateral exceeds the amount of the Pre-Petition Debt.

F.     An immediate and ongoing need exists for the Debtor to obtain financing of the type sought herein, to continue the operation of its business as debtor-in-possession under chapter 11 of the Bankruptcy Code, to minimize the disruption of its operations as a "going concern," and to reassure its vendors, customers, employees and other constituents, including physicians and patients, of the Debtor's continued viability until such time as the Final Hearing (as hereinafter defined) may be conducted.

465922v3

1           G.     Debtor has been unable to obtain financing in the form of unsecured

2    credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense, or

3    solely in exchange for the grant of a special administrative expense priority pursuant to

4    Bankruptcy Code section 364(c)(1). Debtor is also unable to obtain financing in the form of

5    a credit facility secured by liens that are junior to existing liens on property of its estate

6    pursuant to Bankruptcy Code sections 364(c)(2) and (c)(3), except from DIP Lender. Within

7    the timeframe required by their need to avoid immediate and irreparable harm, the Debtor

8    can obtain financing in the amounts required by them only by the grant of liens, including

9    priming liens pursuant to Bankruptcy Code section 364(d), as hereinafter described, but the

10   Debtor has been unable to procure any such financing from any source other than DIP

11   Lender.

12          H.     The Debtor has requested that DIP Lender establish a secured lending

13   facility in favor of the Debtor (the **"DIP Facility"**), pursuant to which the Debtor may obtain

14   revolving credit loans (the **"DIP Loans"**) in a maximum principal amount at any time

15   outstanding not to exceed the lesser of (a) $19,875,000; or (b) the amount reflected in the

16   Budget (as defined in the DIP Loan Agreement) as the DIP Facility balance outstanding for

17   such budgeted time period.  The proceeds of such DIP Facility shall be used by the Debtor

18   in accordance with this Interim Financing Order, the DIP Loan Documents and for the

19   purposes and amounts set forth in the Budget.

20          I.     DIP Lender may be willing to establish the DIP Facility, upon the terms

21   and conditions set forth herein and in that certain Post-Petition Revolving Credit and

22   Security Agreement, a copy of which, in substantially final form, was attached to the DIP

23   Financing Motion.  That agreement, together with all schedules, exhibits and annexes

24   thereto, and as at any time amended or restated, is referred to herein as the **"DIP Loan**

25   **Agreement"** and, together with other agreements, instruments and other documents

26   executed or delivered in connection with the DIP Loan Agreement and as at any time

27   amended, modified or supplemented, is referred to herein as the **"DIP Loan Documents."**

28

465922v3

1  The DIP Facility and the DIP Loan Documents are still subject to credit approval by DIP

2  Lender.

3          J.      A condition to the willingness of DIP Lender to establish the DIP

4  Facility is that, as security for the prompt payment of all DIP Loans, all interest, fees, costs,

5  expenses, including attorneys' fees, and other charges at any time payable by the Debtor

6  under the DIP Loan Documents, DIP Lender receive a security interest in and lien upon all

7  of the Debtor's pre-Petition Date and post-Petition Date assets (real and personal),

8  including, without limitation, all of the Debtor's cash, accounts, accounts receivable,

9  inventory, equipment, fixtures, general intangibles, documents, instruments, chattel paper,

10  deposit accounts, letter-of-credit rights, commercial tort claims, investment property, and

11  books and records relating to any assets of the Debtor and all proceeds (including

12  insurance proceeds) of the foregoing, whether in existence on the Petition Date or

13  thereafter created, acquired or arising and wherever located, all as more fully described in

14  the DIP Loan Agreement (all such real and personal property, and the proceeds thereof,

15  being collectively hereinafter referred to as, the **"DIP Collateral"**), and upon entry of a final

16  order with respect to the DIP Financing Motion, Avoidance Claims and Avoidance Actions *other than Avoidance Claims and*

17  (as such terms are hereinafter defined). DIP Lender requires that the liens and security

18  interests in favor of DIP Lender must be senior to all security interests in and liens upon all

19  of the DIP Collateral as provided herein, except that the liens granted to the DIP Lender

20  shall be subordinate to (i) any valid, enforceable, perfected, unavoidable and

21  unsubordinated liens and security interests on the Pre-Petition Lender Collateral that

22  secure the Pre-Petition Debt, including claims for post-Petition Date interest, fees and

23  charges, ~~and~~ (ii) Permitted Encumbrances. *, and (iii) any other valid, enforceable, perfected and unavoidable liens held by parties who did not receive actual notice of the DIP Financing Motion.*

24          K.      As a result of (1) the granting of liens and security interests herein

25  pursuant to Bankruptcy Code section 364(d); (2) the use of Cash Collateral (as hereinafter

26  defined) pursuant to Bankruptcy Code section 363(c); (3) the use, sale or lease of certain

27  collateral (other than Cash Collateral, as hereinafter defined); (4) the imposition of the

28  automatic stay pursuant to Bankruptcy Code section 362(a); and (5) the establishment of *Avoidance Actions against the DIP Lender*

1   the Professional Expense Escrow and the Carve-Out (both as hereinafter defined), Pre-

2   Petition Lender is entitled to adequate protection for any diminution in value of its interest in

3   the Pre-Petition Lender Collateral.

4           L.      A copy of the DIP Financing Motion and notice of the Interim Hearing

5   was served by electronic mail, fax, overnight courier, hand delivery or U.S. first-class mail

6   upon: (i) the United States Trustee (**"U.S. Trustee"**); (ii) counsel for DIP Lender and Pre-

7   Petition Lender; and (iii) the twenty (20) largest unsecured creditors of Debtor for which

8   Debtor has contact information; and (iv) all entities with liens or security interests of record

9   on the Debtor's property (collectively, the **"Noticed Parties"**). There are no other creditors

10  known or believed by the Debtor to possess any lien with respect to any of the DIP

11  Collateral, other than Permitted Encumbrances.  If any such liens exist, other than

12  Permitted Encumbrances, they will be primed by the new security interests and liens

13  granted to DIP Lender, to the extent provided in Paragraph 8(a), below. In light of the

14  emergency nature of the relief requested in the DIP Financing Motion, such notice

15  constitutes good and sufficient notice of the DIP Financing Motion and the Interim Hearing

16  under the circumstances, and complies with Bankruptcy Code section 102(1), Bankruptcy

17  Rules 2002, 4001(b), 4001(c) and 4001(d), and Local Rules 4001-2 and 9013-1, all as

18  required by Bankruptcy Code sections 363(c) and 364(c).

19          M.      Based upon the record presented at the Interim Hearing, it appears

20  that good cause has been shown for the entry of this Interim Financing Order. The entry of

21  this Interim Financing Order will minimize disruption of the Debtor's business and

22  operations and will preserve the assets of the Debtor's estate for the benefit of the Debtor's

23  creditors, and is in the best interests of the Debtor, its creditors, the physicians and patients

24  the Debtor serves, and the Debtor's estate. The terms of the proposed financing appear fair

25  and reasonable, reflect the Debtor's exercise of prudent business judgment, and are

26  supported by reasonably equivalent value and fair consideration.

27          N.      Based upon the record presented at the Interim Hearing, it appears

28  that the DIP Loan Documents have been negotiated in good faith and at arm's length

465922v3

between the Debtor and DIP Lender. Therefore, all extensions of credit to the Debtor pursuant to the DIP Loan Documents during the interim period shall be deemed to have been made by DIP Lender in good faith, within the meaning of Bankruptcy Code section 364(e).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, as follows:

1.    **Disposition.**  The DIP Financing Motion is hereby granted on an interim basis to the extent and subject to the terms set forth herein, with the foregoing findings incorporated herein by reference. Any objections to the DIP Financing Motion that have not previously been withdrawn or resolved are hereby overruled. This Interim Financing Order shall be valid, binding on all parties-in-interest and fully effective immediately upon entry. The DIP Loans made pursuant to the DIP Loan Agreement and this Interim Financing Order shall mature and, together with all interest thereon and the other Post-Petition Debt (as hereinafter defined), become due and payable (unless such DIP Loans and other Post-Petition Debt, as hereinafter defined, become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Financing Order by way of acceleration or otherwise) thirty (30) calendar days from the date of entry of this Interim Financing Order, unless this Court enters the Final Financing Order authorizing the DIP Loans on a permanent basis before that date.

2.    **Good Cause.**  The ability of the Debtor to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtor's estates, the physicians and patients that the Debtor serves, and the Debtor's creditors, so that the Debtor can continue to operate its business in the ordinary course. The preservation of the going concern values of the Debtor's business is critical to any successful reorganization. The continued operation of the Debtor's hospital facility and emergency room benefits the community in which the Debtor operates, as well as the physicians and patients that the Debtor serves.  The Debtor's estates and the patients and physicians that the Debtor serves all will be immediately and irreparably harmed if this Interim Financing Order is not

465922v3

1  promptly entered.  Accordingly, good cause has been shown for the granting of the interim

2  relief sought in the DIP Financing Motion.

3       **3.**  **Good Faith.**  Based upon the record before the Court, the DIP Loan

4  Documents and this Interim Financing Order have been negotiated in good faith and at

5  arm's-length between the Debtor and DIP Lender. Any DIP Loans and/or other financial

6  accommodations made to the Debtor by DIP Lender pursuant to this Interim Financing

7  Order and the DIP Loan Documents during the interim period shall be deemed to have

8  been extended by DIP Lender in good faith, as that term is used in Bankruptcy Code

9  section 364(e), and DIP Lender shall be entitled to all protections afforded thereunder.

10       **4.**  **Authorization of Interim Borrowing.**  The Debtor's execution of the

11  DIP Loan Documents is hereby authorized. The DIP Facility and DIP Loan Documents are

12  subject to credit committee approval by DIP Lender.  Upon entry of this Interim Financing

13  Order, the Debtor is immediately authorized to (a) obtain the DIP Loans and other

14  extensions of credit (such DIP Loans and other extensions of credit collectively being

15  referred to herein, as **"Credit Extensions"**) pursuant to the DIP Loan Documents and to

16  incur any and all liabilities and obligations thereunder and to pay all interest, fees, costs,

17  expenses (including attorneys' fees) and other obligations provided for under the DIP Loan

18  Documents, and (b) satisfy all conditions precedent and perform all obligations hereunder

19  and thereunder in accordance with the terms hereof and thereof; provided, however, that,

20  pending the final hearing on the DIP Financing Motion (the **"Final Hearing"**), the Debtor

21  may obtain Credit Extensions under the DIP Loan Documents and the Interim Financing

22  Order only in an aggregate principal amount not to exceed $8,992,084, less the Cash

23  Collateral used by Debtor between the Petition Date and the Closing Date, and only to the

24  extent necessary to avoid immediate and irreparable harm to the Debtor's estate which, for

25  purposes hereof, shall mean Credit Extensions used (i) to pay all interest, fees, costs, and

26  expenses (including reasonable attorneys' fees) due and amounts owing by the Debtor to

27  DIP Lender under the DIP Loan Documents, (ii) for purposes specified in the DIP Loan

28  Agreement and the Budget, (iii) to pay adequate protection payments on the Pre-Petition

-10-

465922v3

1  Debt pursuant to this Interim Financing Order and the DIP Loan Agreement, and (iv) for the

2  purposes specified in paragraph 12 hereof. DIP Lender shall have no obligation or

3  responsibility to monitor the Debtor's use of the DIP Loans and may rely upon the Debtor's

4  representations that the amount of Credit Extensions requested at any time, and the use

5  thereof, are in accordance with the requirements of this Interim Financing Order, the DIP

6  Loan Documents and Bankruptcy Rule 4001(c)(2). The DIP Loan Agreement and DIP

7  Facility shall be valid and enforceable and the provisions of this Order shall become

8  effective only upon execution and delivery of the final DIP Loan Agreement by both the

9  Debtor and DIP Lender. Notwithstanding anything to the contrary contained in the DIP

10 Loan Agreement, until entry of the Final Financing Order, the Facility Cap for purposes of

11 calculating the fees provided for in the DIP Loan Agreement, shall be $8,992,084, less the

12 Cash Collateral used by Debtor between the Petition Date and the Closing Date, and the

13 fees provided for in Section 3.1 and 3.4 of the DIP Loan Agreement shall be earned by

14 Lender only upon entry of the Final Financing Order. All Credit Extensions and other Post-

15 Petition Debt (as hereinafter defined) shall be due and payable, and shall be paid, by the

16 Debtor in accordance with the requirements of this Interim Financing Order and the DIP

17 Loan Documents. All fees payable, expenses and/or costs reimbursable under the DIP

18 Loan Documents, this Interim Financing Order or otherwise by the Debtor to DIP Lender

19 are hereby approved. The Debtor is hereby authorized and directed to pay all of the

20 foregoing, in accordance with the terms of the DIP Loan Documents and this Interim

21 Financing Order, without the necessity of the Debtor or DIP Lender filing with the Court any

22 further motion, notice or application for approval or payment thereof. Upon payment of such

23 fees, such fees shall be deemed fully earned, indefeasibly paid, and non-refundable.

24         **5.        Authority to Execute and Deliver Necessary Documents.** Upon

25 execution and delivery thereof, the DIP Loan Documents shall constitute valid and binding

26 obligations of the Debtor, enforceable against the Debtor in accordance with their terms. In

27 furtherance of the provisions of Paragraph 4 of this Interim Financing Order, the Debtor is

28 authorized to do and perform all acts, to make, execute and deliver all instruments and

465922v3

documents (including, without limitation, the execution of security agreements pledge agreements, mortgages, deeds of trust, financing statements and intellectual property filings), and to pay all filing and recording fees, in each case as may be necessary or, in the opinion of DIP Lender, desirable, to give effect to any of the terms and conditions of the DIP Loan Documents, to perfect the DIP Liens (as hereinafter defined) and as otherwise required or contemplated by the DIP Loan Documents.

6.    **Amendments.**  The Debtor and DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Loan Documents, any amendments to and modifications of any of the DIP Loan Documents without further order of the Court, subject to the following conditions: (a) the amendment or modification must not constitute a material change (as hereinafter defined) to the terms of the DIP Loan Documents, (b) copies of the amendment or modification must be served upon counsel for any Committee hereafter appointed, the U.S. Trustee, and other interested parties that specifically make a written request for such notice to counsel for DIP Lender, and (c) notice of the amendment must be filed with the Court. Any amendment or modification that constitutes a material change (as hereinafter defined), to be effective, must be approved by the Court (and, for purposes hereof, a "material change" shall mean a change that operates to shorten the maturity of the DIP Facility, increase the aggregate amount of the commitments under the DIP Facility, increase the rate of interest other than as currently provided in or contemplated by the DIP Loan Documents, add specific Events of Default or enlarge the nature and extent of default remedies available to DIP Lender following an Event of Default).

7.    **Reimbursement of Expenses.**  All costs and expenses incurred by DIP Lender in connection with the negotiation and drafting the DIP Loan Documents or any amendments or modifications thereto, the preservation, perfection, protection and enforcement of DIP Lender's rights hereunder or under the DIP Loan Documents, or in the collection of the Post-Petition Debt, including, without limitation, all filing and recording fees or taxes and fees and expenses of attorneys, accountants, appraisers and other

-12-

465922v3

1 professionals incurred by DIP Lender in connection with any of the foregoing, whether any

2 of the foregoing were incurred prior to or after the Petition Date, shall form a part of the

3 Post-Petition Debt and shall be paid by Debtor in accordance with the terms of the DIP

4 Loan Documents and this Interim Financing Order. No costs, fees or expenses of the DIP

5 Lender's professionals shall be subject to Court approval or U.S. Trustee guidelines, and

6 no recipient of any payment thereof shall be required to file with respect thereto any interim

7 or final fee application with the Court; provided, however, that the DIP Lender shall provide

8 copies of its professionals' fee invoices to the Office of the United States Trustee and any

9 Committee hereafter appointed, within five (5) business days of the date such invoices are

10 issued to the Debtor.

11         **8.**     **DIP Liens.** All Credit Extensions, together with all interest, fees,

12 expenses (including attorneys' fees) and other charges, at any time or times payable by the

13 Debtor to DIP Lender in connection therewith or otherwise pursuant to the DIP Loan

14 Documents (all such Credit Extensions, interest, fees, expenses (including attorneys' fees)

15 and other charges, including any "Obligations," as such term is defined in the DIP Loan

16 Agreement, are collectively referred to herein as the **"Post-Petition Debt")** shall be, and

17 hereby are, secured by security interests and liens in favor of DIP Lender with respect to all

18 of the DIP Collateral, as follows: _any other valid, enforceable, perfected and unavoidable liens held by entities that did not so receive actual notice of the DIP Motion_

19         (a)    pursuant to Bankruptcy Code section 364(c)(2), perfected first

20 priority senior security interests in and liens upon all DIP Collateral that, as of the

21 Petition Date, is not Pre-Petition Lender Collateral _or_ subject to Permitted

22 Encumbrances, including, without limitation, any DIP Collateral that secures any

23 obligations owing on the Petition Date other than the Pre-Petition Debt and the

24 Permitted Encumbrances; any other liens held by any party that has received actual

25 notice of the DIP Financing Motion shall be primed by the new security interests and

26 liens securing the Post-Petition Debt and a first priority security interest in all assets

27 acquired after the Petition Date including, without limitation, all accounts receivable

28 for goods provided or services rendered on or after the Petition Date; and

-13-

1      (b)      pursuant to Bankruptcy Code section 364(c)(3), perfected junior

2      security interests in and liens upon all DIP Collateral that is subject to Permitted

3      Encumbrances and Pre-Petition Lender's liens on the Pre-Petition Lender Collateral.

4      All of the security interests and liens referred to above, together with those granted and

5      conveyed pursuant to the DIP Loan Documents, are referred to herein as, the **"DIP Liens."**

6      Until entry of a final order with respect to the DIP Financing Motion, the DIP Liens shall not

7      attach to any of the following property: (i) any claims arising under Bankruptcy Code

8      sections 502(d), 544, 545, 547, 548, 549, 550 or 553 (**"Avoidance Claims"**), or (ii) any

9      monies recovered in connection with the successful prosecution or settlement of Avoidance

10     Claims (**"Avoidance Proceeds"**).  The DIP liens shall at all times be subordinate and

11     subject to the Carve-Out. ~~At no time will the security interests and liens referred~~

       ~~to above attach to~~ *Avoidance Claims or Avoidance Proceeds attributable*

12     9.     **Superpriority Claim.** *to actions against the DIP Lender.*

13     (a)     Upon entry of this Interim Financing Order, DIP Lender shall be

14     deemed to have an allowed superpriority administrative expense claim (the **"Superpriority**

15     **Claim"**) pursuant to Bankruptcy Code section 364(c)(1) for all of the Post-Petition Debt,

16     having priority over all other administrative expenses in the Chapter 11 Cases of the kind

17     specified in or arising or ordered pursuant to Bankruptcy Code sections 105(a), 326, 328,

18     330, 331, 503(a), 503(b), 506(c) (upon entry of final order with respect to the DIP Financing

19     Motion), 507(a), 507(b), 546(c), 726 or 1114, whether or not such expenses or claims may

20     become secured by a judgment lien or other non-consensual lien, levy, attachment or

21     otherwise. Until entry of a final order with respect to the DIP Financing Motion, the

22     Superpriority Claim shall not attach to Avoidance Claims or Avoidance Proceeds and shall

23     be subject in all events to the Carve-Out. ) *Same insert.*

24     (b)     No lien or security interest granted to DIP Lender hereunder, including

25     the DIP Liens, shall (i) be subject to any pre-petition or post-petition lien or security interest,

26     other than a Permitted Encumbrance, that is (A) avoided and preserved for the benefit of

27     the Debtor's estates under Bankruptcy Code section 551, or (B) subject to subordination

28

-14-

465922v3

1  under Bankruptcy Code section 510, or (ii) hereafter be subordinated to or made <u>pari passu</u>

2  with any other lien or security interest under Bankruptcy Code section 364(d).

3          (c)    The DIP Liens, the Superpriority Claim, the Adequate Protection Liens

4  (as hereinafter defined), the Superpriority Adequate Protection Claim (as hereinafter

5  defined) and other rights and remedies granted to DIP Lender or Pre-Petition Lender (as

6  applicable) under this Interim Financing Order shall continue in these cases,

7  notwithstanding any conversion thereof, and such liens and security interests shall maintain

8  their priority as provided in this Interim Financing Order until (i) with respect to DIP Lender,

9  all the Post-Petition Debt has been indefeasibly satisfied in full in cash and the commitment

10  is terminated in accordance with the terms of the DIP Loan Agreement; and (ii) with respect

11  to the Pre-Petition Lender, the indefeasible payment in full in cash of the Superpriority

12  Adequate Protection Claim.

13          **10.    No Surcharge.**  Subject to entry of a final order with respect to the DIP

14  Financing Motion, in consideration of the DIP Facility, the Carve-Out (as hereinafter

15  defined), and other amounts that DIP Lender may, in its sole discretion, choose to advance

16  after a Carve-Out Event (as hereinafter defined) and except with respect to (i) the Carve-

17  Out and (ii) expenses incurred pursuant to an approved budget prior to the Carve-Out

18  including the deposits into the Professional Expense Escrow, in no event shall any costs or

19  expenses of administration be imposed upon DIP Lender or any of the DIP Collateral

20  pursuant to Bankruptcy Code sections 506(c), 105(a), or otherwise, without the prior written

21  consent of DIP Lender, and no such consent shall be implied from any action, inaction or

22  acquiescence by DIP Lender. DIP Lender shall not be subject in any way whatsoever to the

23  equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral

24  securing any of the Post-Petition Debt.

25          **11.    Repayment.**  The Debtor shall be liable to repay the Post-Petition Debt

26  in accordance with the DIP Loan Documents. The Post Petition Debt shall be due and

27  payable, and shall be paid, as and when provided for in the DIP Loan Documents, without

28  any right of rescission, setoff, counterclaim or defense for any reason, unless and to the

465922v3

1  extent expressly otherwise agreed to in writing by DIP Lender. In no event shall the Debtor

2  be authorized to offset or recoup any amounts owed, or alleged to be owed, by Pre-Petition

3  Lender or DIP Lender to the Debtor against any of the Post-Petition Debt unless and to the

4  extent expressly otherwise agreed to in writing by DIP Lender.

5         **12.    Permitted Uses of Loan Proceeds and Cash Collateral.**

6         (a)    During the period of this Interim Financing, Debtor shall be authorized

7  to use the proceeds (including, without limitation, cash, accounts, negotiable instruments

8  and any other property comprising "cash collateral" within the meaning of Bankruptcy Code

9  section 363(a)) of any portion of the DIP Collateral (all such proceeds, whether arising or

10 collected prior to or after the Petition Date (including all cash on hand) being collectively

11 referred to herein as, **"Cash Collateral"**) only for application to the Post-Petition Debt or

12 the Pre-Petition Debt in accordance with the DIP Loan Agreement. Notwithstanding the

13 foregoing, all DIP Collateral (including Cash Collateral) shall be subject to the Carve-Out

14 (as hereinafter defined).

15        (b)    Except as otherwise set forth in the last sentence of subparagraph (a)

16 of this paragraph 12, the Debtor shall cause all proceeds of the DIP Collateral to be

17 remitted to one or more lockboxes designated by DIP Lender, and then further remitted to

18 the Concentration Account as has been done under the Pre-Petition Loan Agreement.  If

19 any such proceeds are received by the Debtor directly, then such proceeds shall be

20 promptly deposited to a dominion account or concentration account in the name or under

21 the control of DIP Lender, all as more fully set forth in the DIP Financing Documents. DIP

22 Lender shall be authorized to apply all such proceeds (subject to final payment or collection

23 in the case of checks or other payment items) to the Post-Petition Debt or the Pre-Petition

24 Debt in accordance with the DIP Loan Agreement. Prior to the remittance to DIP Lender of

25 any proceeds of the DIP Collateral required to be remitted to DIP Lender by this Interim

26 Financing Order, the Debtor shall be deemed to hold such proceeds in trust for the benefit

27 of DIP Lender.

28

465922v3

(c)    All proceeds of Cash Collateral received by the Debtor on account of accounts receivable for goods delivered or services provided prior to the Petition Date shall be delivered to the Pre-Petition Lender and applied to the revolving facility under the Pre-Petition Loan Documents until all obligations under the revolving loan facility have been paid in full, including all post-petition interest, fees and charges with respect thereto.  All proceeds on account of accounts receivable for services rendered and goods, whether provided before or after the Petition Date shall be delivered to the DIP Lender to be applied first to the revolving facility under the Pre-Petition Loan Agreement until it has been paid in full and thereafter to the Obligations under the DIP Loan Agreement, subject to the adjustment set forth in 12(d), below.

(d)    Paragraph 12 is intended to result in the application of all Cash Collateral that constitutes proceeds of Pre-Petition Lender Collateral (**"Pre-Petition Lender Collateral Collections"**) to the Pre-Petition Loan, but not to provide for application of Cash Collateral that constitutes proceeds of DIP Collateral that is not also Pre-Petition Lender Collateral (**"DIP Collateral Collections"**) to the Pre-Petition Loan in light of the facts that (i) the Debtor cannot identify the source of all Cash Collateral the day it is collected, and (ii) a delay in the application of Cash Collateral to one of the secured claims could increase interest expense and reduce Debtor's liquidity.  Therefore all Cash Collateral will initially be applied to the Pre-Petition Loan, but not later than the earliest to occur of (A) 180 days after the Closing Date and (B) the date the Debtor concludes that all pre-petition accounts receivable that are likely to be collected have been collected, excluding *de minimis* amounts, Debtor will provide an accounting for all Cash Collateral delivered to DIP Lender, showing whether that Cash Collateral was Pre-Petition Lender Collateral Collections or DIP Collateral Collections.  If the total Pre-Petition Lender Collateral Collections delivered to DIP Lender is less than the balance due on the Pre-Petition Revolver on the Petition Date, DIP Lender shall make the following adjustments: (1) the difference between the Pre-Petition Revolver on the Petition Date and the Pre-Petition Lender Collateral Collections (the "Pre-Petition Revolver Shortfall") will be reinstated as part of the Lender's claim on

-17-

account of the Pre-Petition Revolver; (2) the balance of the DIP Obligations will be reduced by the Pre-Petition Revolver Shortfall plus 1%, if Debtor has previously paid the Commitment Fee as required by the DIP Loan Documents (to compensate for the Commitment Fee on the portion of the DIP Facility eliminated under (3), below), because such collections will be applied to the DIP Loan; and (3) the maximum availability under the DIP Facility will be permanently reduced by the Pre-Petition Revolver Shortfall. If there is a Pre-Petition Revolver Shortfall and Debtor receives Pre-Petition Lender Collateral Collections after the foregoing accounting, all such Pre-Petition Lender Collateral Collections shall be applied to the Pre-Petition Revolver.

(e)    Notwithstanding anything to the contrary herein, proceeds or payments from the Pre-Petition Lender Collateral that are remitted or deemed remitted to Pre-Petition Lender and applied to the Pre-Petition Debt shall be subject to potential disgorgement, but only to the extent provided for by the Investigation Period provisions of paragraph 22 hereof.

(f)    Notwithstanding any other provision in this Paragraph 12 the monthly capitation payment received from HealthNet shall be deposited into a separate lockbox designated by DIP Lender and shall constitute Cash Collateral of DIP Lender, but Debtor shall have the right to use such Cash Collateral prior to an Event of Default as defined below, to pay obligations incurred in the ordinary course of business pursuant to the HealthNet executory contract and consistent with the Budget.

## 13.    **Fees and Expenses of Professional Persons.**

(a)    The Debtor is authorized, for so long as no Carve-Out Event (as hereinafter defined) has occurred and is continuing, to use proceeds of the DIP Loans (but not any other DIP Collateral without the prior written consent of DIP Lender, except for the Carve-Out (as hereinafter defined)), solely for purposes authorized by this Interim Financing Order and by the DIP Loan Agreement, including to pay such compensation and expense reimbursement (collectively, the **"Professional Fees and Expenses"**) in amounts no greater than the specific line item amounts set forth in the Budget (provided that unused

-18-

465922v3

1   amounts in any period shall carry backward or forward until and unless a Carve-Out Event

2   occurs), of (i) each professional (including each law firm, accounting firm, appraiser,

3   consultant and investment banker) retained by the Debtor with Court approval (the **"Debtor**

4   **Professionals"**) and (ii) professionals retained by any Committee with Court approval (the

5   **"Committee Professionals,"** and together with Debtor Professionals, **"Professional**

6   **Persons"**), in each case only to the extent that such compensation and expense

7   reimbursement is approved by the Court or pursuant to any interim fee procedures

8   approved in the Case. Prior to such Court approval, all Professional Persons are directed to

9   submit to the Debtor on or before the last calendar day of each month, with copies

10  concurrently sent to counsel for DIP Lender, statements for compensation for services

11  rendered and reimbursement of expenses incurred by them during the preceding month.

12          (b)    The Debtor is directed, for so long as no Carve-Out Event (as

13  hereinafter defined) has occurred and is continuing, to deposit into an escrow account (the

14  **"Professional Expense Escrow"**) maintained by counsel for the Debtor, the specific line

15  item amounts set forth in the Budget for Professional Fees and Expenses for each

16  Professional Person pending further order of the Court with respect to the allowance of

17  such fees and expenses, on the first business day of each week covered by the Budget,

18  and the right of every Professional Person to seek payment from the Professional Expense

19  Escrow shall be limited to the amount set forth in the Budget for that Professional Person.

20          (c)    DIP Lender shall have no duty to ensure that the Debtor discharges

21  any of its obligations to the Professional Persons under subparagraphs (a) and (b) of this

22  paragraph 13. Notwithstanding anything to the contrary contained in this Interim Financing

23  Order or the DIP Loan Documents, (i) the DIP Liens and Superpriority Claim conferred

24  upon DIP Lender, and (ii) all liens in favor of Pre-Petition Lender (whether an Adequate

25  Protection Lien (as hereinafter defined) or liens that were granted prior to the Petition

26  Date), shall be subject and subordinate to the rights of Professional Persons with respect to

27  the Professional Expense Escrow. Accordingly, neither the Debtor nor any of its creditors

28  shall have any claim to or interest in the escrowed Professional Fees and Expenses, other

465922v3

than with respect to any Professional Fees and Expenses or other amounts, if any, that are escrowed but subsequently disallowed or ordered to be disgorged by final order of the Court, or that remain in escrow following (1) full payment of all allowed Professional Fees and Expenses (the **"Excess Escrow Funds"**), then (2) the entitlement of DIP Lender and Pre-Petition Lender to receive the Excess Escrow Funds for application to any Pre-Petition Debt or the Post-Petition Debt as provided in the DIP Loan Agreement, and then (3) the entitlement of the Debtor to receive the Excess Escrow Funds (after indefeasible payment in full of the Post-Petition Debt and the Pre-Petition Debt and termination of the DIP Loan Documents and the Pre-Petition Loan Documents). Any deposits made to the Professional Expense Escrow pursuant to the foregoing authority during the pendency of the Chapter 11 Case shall not reduce the Carve-Out, so long as no Carve-Out Event has occurred and is continuing at or before the time any such deposit is made, but the Carve-Out shall be reduced by the amount of each payment of Professional Fees and Expenses (other than payments from the Professional Expense Escrow) after a Carve-Out Event, regardless of when such Professional Fees and Expenses were incurred.

(d)    Nothing in this Interim Financing Order shall preclude DIP Lender or Pre-Petition Lender from asserting any objections to professional fees or expenses sought to be paid under the provisions of Bankruptcy Code sections 330, 331 and/or 503.

**14.    Carve-Out.**

(a)    Notwithstanding anything to the contrary contained in this Interim Financing Order or the DIP Loan Documents, the DIP Liens, the Superpriority Claim, the Superpriority Adequate Protection Claim, and all liens in favor of the Pre-Petition Lender (whether granted prior to the Petition Date or pursuant to this Interim Financing Order (<u>i.e.</u>, the Adequate Protection Liens)), shall be subject and subordinate to the payment of the following: (i) Debtor Professionals from the Professional Expense Escrow and expenses of up to $250,000 for all Debtor Professionals (excluding an Investment Banker) incurred following a Carve-Out Event, (ii) any "success" or "transaction" fee due to an investment banker or other similar professional (collectively, **"Investment Banker"**) that is earned

-20-

465922v3

upon the sale or other transaction as provided for in any engagement letter approved by

DIP Lender, whether incurred before or after a Carve-Out Event; (iii) Committee

Professionals from the Professional Expense Escrow and not more than $25,000 for fees

and expenses incurred after a Carve-Out Event; (iv) fees required to be paid to the Clerk of

the Court; and (v) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) (the

amounts described in the preceding clauses are collectively referred to herein as, the

**"Carve-Out"**); provided, further, however, that no proceeds of DIP Loans, no DIP Collateral

(including Cash Collateral), and no amounts received pursuant to the Professional Expense

Escrow or the Carve-Out may be used to pay Professional Fees and Expenses of any

Professional Person or any other costs incurred in connection with (1) commencing or

continuing any claims, causes of actions or contested matters against DIP Lender or Pre-

Petition Lender, including, without limitation, discovery proceedings subsequent to the

commencement of any such claims, causes of action or contested matters; (2) preventing,

hindering or delaying performance or enforcement by DIP Lender or Pre-Petition Lender of

their rights or remedies under this Interim Financing Order, any of the DIP Loan Documents

or any of the Pre-Petition Loan Documents (other than seeking a Court order authorizing

use of cash or noncash collateral after the DIP Loans are paid in full) ; (3) challenging the

Adequate Protection Liens (as hereinafter defined), the Superpriority Adequate Protection

Claim (as hereinafter defined), the DIP Liens or the Superpriority Claim or any liens or

claims of Pre-Petition Lender (other than with respect to the amount of any such claim or

lien), or (4) any other purpose prohibited by this Interim Financing Order or the DIP Loan

Documents; provided, however, that any Committee professionals shall be entitled to incur

and be paid, in accordance with the Budget, an amount not to exceed $10,000 in

connection with the investigation referred to in subparagraph (b) of paragraph 22. The term

**"Carve-Out Event"** shall mean the soonest to occur of: (i) the last day of the Term (as

defined in the DIP Loan Agreement), (ii) the Termination Date (as defined in the DIP Loan

Agreement) and, in each case, accompanied by a cessation of funding by the DIP Lender;

(iii) there exists an a Event of Default under (and as defined in) the DIP Loan Agreement

-21-

465922v3

1  accompanied by a cessation of funding by the DIP Lender and termination of the

2  commitment thereunder, (iv) the filing of an adversary proceeding by any Committee or

3  other party-in-interest against Pre-Petition Lender and/or DIP Lender during the

4  Investigation Period (as hereinafter defined) accompanied by a cessation of funding by the

5  DIP Lender and termination of the commitment thereunder, and (v) any violation of the

6  Interim Financing Order.

7           (b)    If Debtor's chapter 11 case is converted to a case under chapter 7 or a

8  chapter 11 trustee is appointed in this chapter 11 case, any portion of the Carve-Out that is

9  unused as of the applicable date shall be available to pay the fees and expenses of the

10 trustee and any professionals employed by the trustee, but the total amount of the Carve-

11 Out shall not be increased without DIP Lender's prior written consent and the Carve-Out is

12 subject to the same restrictions on use set forth in Paragraph 14(a).

13          (c)    After a Carve-Out Event, DIP Lender may, in its sole discretion at any

14 time and without being deemed to have waived any Event of Default or to have reinstated

15 the DIP Facility (or any commitments thereunder), satisfy all or any portion of the Carve-

16 Out by funding one or more DIP Loans pursuant to the DIP Loan Agreement or by paying

17 any Court-approved Professional Fees and Expenses that are covered by the Carve-Out

18 (which payments shall be deemed to constitute DIP Loans), and, in such event, such DIP

19 Loans shall be entitled to all of the benefits and security of the DIP Loan Documents and

20 this Interim Financing Order and shall reduce the Carve-Out to the extent of any such DIP

21 Loans used to pay any such Professional Fees and Expenses.

22          **15.    Preservation of Rights Granted Under This Interim Financing**

23 **Order.**

24          (a)    During this Chapter 11 Case, or in any successor case, there shall not

25 be entered any order that authorizes the obtaining of credit or the incurrence of

26 indebtedness by the Debtor (or any trustee or examiner) that is (i) secured by a security,

27 mortgage or collateral interest or lien on all or any part of the DIP Collateral, that is equal or

28 senior to the DIP Liens, or (ii) entitled to priority administrative status that is equal or senior

465922v3

1    to the Superpriority Claim granted to DIP Lender herein or the Adequate Protection Claim

2    granted to Pre-Petition Lenders hereunder; provided, however, that nothing herein shall

3    prevent the entry of an order that specifically provides that, as a condition to the granting of

4    the benefits of clauses (i) or (ii) above, all of the Post-Petition Debt and the Adequate

5    Protection Claim must be indefeasibly paid in full, in cash from the proceeds of such credit

6    or indebtedness.

7          (b)   If the Chapter 11 Case is dismissed, converted or substantively

8    consolidated, then neither the entry of this Interim Financing Order nor the dismissal,

9    conversion or substantive consolidation of any such Chapter 11 Case shall affect the rights

10    of DIP Lender under the DIP Loan Documents or the DIP Lender or the Pre-Petition Lender

11    under this Interim Financing Order, and all of the respective rights and remedies thereunder

12    of DIP Lender and the Pre-Petition Lender shall remain in full force and effect as if none of

13    this Chapter 11 Case had been dismissed, converted, or substantively consolidated.  The

14    Debtor shall not seek, and it shall constitute an Event of Default if the Debtor seeks, or if

15    there is entered, any order dismissing any of these Chapter 11 Cases. If an order

16    dismissing any of this Chapter 11 Case is at any time entered (under Bankruptcy Code

17    sections 305, 1112, or otherwise), then such order shall provide (in accordance with

18    Bankruptcy Code sections 105 and 349) that the liens and security interests granted to DIP

19    Lender and Pre-Petition Lender hereunder and in the DIP Loan Documents, as the case

20    may be, shall continue in full force and effect, shall remain binding on all parties-in-interest

21    and shall maintain their priorities as provided in this Interim Financing Order until, as to DIP

22    Lender, all Post-Petition Debt shall have been paid in full in cash, all letters of credit shall

23    have been cancelled or cash collateralized to the extent required under the DIP Loan

24    Agreement and the commitment shall have been terminated in accordance with the DIP

25    Loan Agreement.

26          (c)   The provisions of this Interim Financing Order, and any actions taken

27    pursuant hereto, shall survive the entry of any order confirming any plan of reorganization

28    for the Debtor or converting the Chapter 11 Case from chapter 11 to chapter 7.  This Court

465922v3

1  shall not enter a confirmation order or dismissal order that shall alter the terms of *after reasonable notice.*

2  repayment of any of the Post-Petition Debt from those set forth In the DIP Loan Documents

3  and this Order, unless ~~otherwise agreed to in writing~~ *this provision is waived* by the DIP Lender.

4          (d)    The Post-Petition Debt shall not be discharged by the entry of any

5  order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to

6  Bankruptcy Code section 1141(d)(4), the Debtor has waived such discharge.

7          **16.    Adequate Protection.**  As adequate protection for and to the extent of

8  any diminution in value of its interest in the Pre-Petition Lender Collateral resulting from

9  (a) the granting of priming liens and security interests herein pursuant to Bankruptcy Code

10  section 364(d); (b) the use of Cash Collateral pursuant to Bankruptcy Code section 363(c);

11  (c) the use, sale or lease of its Pre-Petition Lender Collateral (other than Cash Collateral);

12  (d) the imposition of the automatic stay pursuant to Bankruptcy Code section 362(a); and

13  (e) the establishment of the Professional Expense Escrow and the Carve-Out:

14          (i)    Effective upon entry of this Interim Financing Order and without

15          the necessity of the execution of mortgages, security agreements, pledge

16          agreements, financing statements or otherwise, Pre-Petition Lender is hereby

17          granted valid, duly perfected and non-avoidable replacement security interests and

18          liens in and to all of the Pre-Petition Lender Collateral and the DIP Collateral as

19          partial adequate protection (to the extent of any diminution in value of the Pre-

20          Petition Lender Collateral). Such liens are referred to herein, as the **"Adequate**

21          **Protection Liens"** and shall not attach for purposes of this Interim Financing Order

22          to Avoidance Actions or Avoidance Action Proceeds and shall be senior in all

23          respects to the DIP Lender Liens.  The Debtor shall not seek in any way to alter or

24          cause to be subordinated the Adequate Protection Lien provided to Pre-Petition

25          Lender by this Interim Financing Order.

26          (ii)    The Debtor is authorized and directed to pay, and Pre Petition

27          Lender shall be entitled to collect, on the first day of each month after the Petition

28          Date, adequate protection payments equal to a rate of Prime (as defined in the Pre-

-24-

465922v3

Petition Loan Agreement) plus 5.5% per annum on the outstanding amount due under the Pre-Petition Facility (**"Adequate Protection Payments"**).  Payment of the Adequate Protection Payments is without prejudice to any assertion by the Committee or any other party in interest that the Pre-Petition Lender Collateral was worth less than the Pre-Petition Debt on the Petition Date and, therefore, Pre-Petition Lender's secured claim does not include post-petition interest and fees pursuant to Bankruptcy Code § 506(b), so long as any such contention is presented during the Investigation Period pursuant to Paragraph 22.  If such a challenge is filed during the Investigation Period and this Court determines that the Pre-Petition Lender is not entitled to post-petition interest each Adequate Protection payment shall be applied to the allowed secured claim of Pre-Petition Lender.

(iii)    Upon entry of this Interim Financing Order, Pre-Petition Lender shall be deemed to have an allowed superpriority adequate protection claim to the extent the Adequate Protection Liens are not adequate to protect Pre-Petition Lender against the diminution in value of the Pre-Petition Lender Collateral (the **"Superpriority Adequate Protection Claim"**). The Superpriority Adequate Protection Claim shall have priority over all other administrative expenses in the Chapter 11 Case of the kind specified in or arising or ordered pursuant to Bankruptcy Code sections 326, 328, 330, 331, 503(b), 507(a), 507(b), 726 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, attachment or otherwise, but shall be subordinate to the Superpriority Claim granted to DIP Lender in this Interim Financing Order and to the Carve-Out.

(iv)    No Adequate Protection Lien granted to Pre-Petition Lender hereunder shall (i) be subject to any pre-petition or post-petition lien or security interest, other than a Permitted Encumbrance, that is (A) avoided and preserved for the benefit of the Debtor's estates under Bankruptcy Code section 551, or (B) subject to subordination under Bankruptcy Code section 510, or (ii) hereafter be

-25-

465922v3

1    subordinated to or made _pari passu_ with any other lien or security interest under

2    Bankruptcy Code section 364(d).

3         (v)    Notwithstanding anything to the contrary in this Interim

4    Financing Order, the application of payments or collections by Pre-Petition Lender to

5    post-petition interest or to any legal fees or other charges payable under the Pre-

6    Petition Loan Agreement shall be without prejudice to the right of any interested

7    party (excluding the Debtor) to challenge the validity, extent, priority, amount,

8    perfection, and enforceability of the Pre-Petition Debt as of the Petition Date and,

9    therefore, without prejudice to any right of such party to request the Court to compel

10    Pre-Petition Lender to reapply monies originally applied to such interest, fees or

11    other charges to the principal balance, of the Pre-Petition Debt or, as provided in

12    Paragraph 12(d), to the DIP Obligations; _provided, however_, that any such challenge

13    must be made, or any such right must be exercised, prior to the expiration of the

14    Investigation Period (as hereinafter defined)

15         (vi)    Nothing herein shall be deemed to be a waiver by Pre-Petition

16    Lender of its rights to request additional or further protection of its interest in any

17    property of the Debtor. Pre-Petition Lender shall be deemed to have reserved all

18    rights to assert entitlement to the protections and benefits of Bankruptcy Code

19    section 507(b) in connection with any use, sale, or other disposition of any of the

20    Pre-Petition Lender Collateral, to the extent that the protection afforded by this

21    Interim Financing Order to Pre-Petition Lender's pre-petition interests in any Pre-

22    Petition Lender Collateral proves to be inadequate.

23        **17.**    **Automatic Perfection of Liens**.

24        (a)    The DIP Liens and Adequate Protection Liens shall be deemed valid,

25    binding, enforceable and perfected upon entry of this interim Financing Order. DIP Lender

26    shall not be required to file any UCC-1 financing statements, mortgages, deeds of trust,

27    security deeds, notices of lien or any similar document or take any other action (including

28    possession of any of the DIP Collateral in order to perfect any of the DIP Liens or Adequate

-26-

465922v3

1  Protection Liens. If DIP Lender chooses, in its discretion, to file any such mortgages, deeds

2  of trust, security deeds or UCC-1 financing statements, or take any other action to perfect

3  any part of the DIP Liens or Adequate Protection Liens, the Debtor and its officers shall

4  cooperate by executing any documents or instruments that DIP Lender shall reasonably

5  request, and all such documents and instruments shall be deemed to have been filed or

6  recorded at the time and on the date of entry of this Interim Financing Order. DIP Lender

7  may, in its sole discretion, file a certified copy of this Interim Financing Order in any filing

8  office in each jurisdiction in which the Debtor is organized or has or maintains any DIP

9  Collateral or an office, and each filing office is directed to accept such certified copy of this

10  Interim Financing Order for filing and recording without the imposition of any stamp,

11  intangibles, recording or similar tax in accordance with the provisions of Bankruptcy Code

12  section 1146.

13            (b)     To the extent permitted by applicable law, upon entry of a final order

14  with respect to the DIP Financing Motion, pursuant to Bankruptcy Code sections 363(b)(1)

15  and 364(c)(2), any provisions in any of the leases of nonresidential real property under

16  which the Debtor is a lessee (each, a **"Lease"** and collectively, the **"Leases"**) and any

17  provisions in any of the license agreements under which the Debtor is a licensee, that

18  require the consent or approval of one or more of the Debtor's landlords or licensors, as the

19  case may be, in order for the Debtor to pledge or mortgage its interest in such Lease or

20  other agreement, are and shall be deemed inconsistent with the provisions of the

21  Bankruptcy Code and are and shall have no force and effect with respect to the

22  transactions granting liens, security interests and mortgages by the Debtor in accordance

23  with the DIP Loan Documents.

24          **18.**    **Events of Default; Remedies.**

25            (a)     Upon or after a violation of this Interim Financing Order or the

26  occurrence of an **"Event of Default"** under (and as defined in) the DIP Loan Agreement,

27  DIP Lender and Pre-Petition Lender shall: (i) have no further obligation to provide financing

28  under the DIP Loan Documents or this Interim Financing Order; (ii) be fully authorized, in its

465922v3

sole discretion, to, without providing any prior notice thereof, accelerate the Post-Petition

Debt under the DIP Loan Documents, charge interest at the default rate set forth in the DIP

Loan Agreement, require cash collateralization of obligations relating to any letters of credit

issued pursuant to the DIP Loan Agreement, hold any balances in any accounts of the

Debtor, and terminate further Credit Extensions under the DIP Facility as provided in the

DIP Loan Agreement; (iii) enforce all liens with respect to the DIP Collateral or the Pre-

Petition Lender Collateral, effect offsets of bank account balances and take all other actions

and exercise all other remedies under the DIP Loan Documents, Pre-Petition Loan

Documents and applicable law that may be necessary or deemed appropriate by either DIP

Lender or Pre-Petition Lender to collect any of the Post-Petition Debt or Pre-Petition Debt,

to proceed against or realize upon all or any portion of the DIP Collateral or the Pre-Petition

Lender Collateral as if this Chapter 11 Case or any superseding chapter 7 case were not

pending and otherwise to enforce the DIP Loan Documents, the Pre-Petition Loan

Documents and this Interim Financing Order, subject to the provisions of 18(b), below.

(b)    If the Event of Default is the failure of the Debtor to pay in full the DIP

Loans or Credit Extensions on the Maturity Date, the automatic stay shall be and is hereby

terminated to permit the DIP Lender to enforce its rights in all of the DIP Collateral securing

the Obligations under the DIP Loan Agreement by all means permitted under applicable

law, without further notice or a hearing.  If any other Event of Default occurs and the Debtor

fails to cure that Event of Default within the time period (if any) permitted under the DIP

Loan Documents, DIP Lender may seek relief from the automatic stay on an expedited

basis on or after the third business day after providing notice of that request and the Debtor

shall not object to an expedited hearing on any such motion.  Any Event of Default under

the DIP Loan Documents shall constitute an Event of Default under the Pre-Petition Debt.

Pre-Petition Lender shall have the right to seek relief from the automatic stay on the same

terms and conditions as DIP Lender based on any such Event of Default under the DIP

Loan Documents; provided, however, that if Debtor indefeasibly pays the DIP Loans in full

in cash Debtor reserves the right to seek to use Cash Collateral that secures the Pre-

-28-

465922v3

1    Petition Loans and to oppose a request by Pre-Petition Lender for relief from the automatic
2    stay.

3       (c)  If any hearing is held pursuant to Paragraph 18(b) regarding the
4    exercise of any rights or remedies by DIP Lender, the only issue at such hearing that may
5    be raised by any party in opposition to the exercise of any such rights or remedies shall be
6    whether, in fact, an Event of Default has occurred and is continuing, and (i) the Debtor has
7    the burden of proof and (ii) the Debtor shall be deemed to have waived its right (if any) to
8    seek any relief (including, without limitation, any right to use, or seek authority from the
9    Court to use, any DIP Collateral or the Pre-Petition Lender Collateral or the proceeds
10   thereof, injunctive relief under Bankruptcy Code section 105 or otherwise).  If any hearing is
11   held pursuant to Paragraph 18(b) regarding the exercise of any rights or remedies by Pre-
12   Petition Lender after the DIP Loans have been indefeasibly paid in full in cash, the only
13   issues at such hearing that may be raised by any party in opposition to the exercise of any
14   such rights or remedies shall be (i) whether, in fact, an Event of Default has occurred and is
15   continuing (as to which the Debtor has the burden of proof) and (ii) whether the Pre-Petition
16   Lender is adequately protected with respect to the proposed use of cash and noncash
17   collateral.

18      (d)  The rights, remedies, powers and privileges conferred upon DIP
19   Lender and Pre-Petition Lender pursuant to this Interim Financing Order shall be in addition
20   to and cumulative with those contained in the DIP Loan Documents and the Pre-Petition
21   Loan Documents.

22      **19.**  **Modification of Automatic Stay.**  The automatic stay provisions of
23   Bankruptcy Code section 362, to the extent applicable, are hereby lifted, vacated, modified
24   and/or terminated as to DIP Lender to the extent necessary to implement the provisions of
25   this Interim Financing Order and the DIP Loan Documents, thereby permitting DIP Lender,
26   inter alia, to receive from the Debtor all cash, checks or other collections or proceeds from
27   the DIP Collateral for application to the Post-Petition Debt and the Pre-Petition Debt, as
28   applicable and as provided in the DIP Loan Documents and this Interim Financing Order, to

-29-

file or record any UCC-1 financing statements mortgages, deeds of trust, security deeds and other instruments and documents evidencing or validating the perfection of the DIP Liens and Adequate Protection Liens and to enforce such liens upon default subject to the prior notice provisions of this Interim Financing Order.

20.    **Monitoring of Collateral.**  Without limiting the rights of access and information afforded DIP Lender under the DIP Loan Agreement, the Debtor shall permit:

(a)    representatives of DIP Lender to visit and have access to the business offices, facilities, premises and books and records of the Debtor during normal business hours to inspect any DIP Collateral or the Pre-Petition Lender Collateral and to verify or to obtain supporting details concerning the financial information to be provided to DIP Lenders hereunder or under any of the DIP Loan Documents.

(b)    DIP Lender shall be authorized to retain appraisers, consultants and financial advisors, at the Debtor's expense, which appraisers, consultants and advisors shall be afforded reasonable access to the DIP Collateral or the Pre-Petition Lender Collateral and the Debtor's business offices, facilities and premises, during normal business hours, for purposes of monitoring the business of the Debtor, monitoring and verifying the Debtor's compliance with the terms of the DIP Loan Documents and this Interim Financing Order, and appraising all or any part of the DIP Collateral or the Pre-Petition Lender Collateral.  The Debtor shall, inter alia, assist, cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request under the circumstances.

21.    **Subsequent Reversal or Modification.**  Notwithstanding any reversal, stay, modification or vacatur, any post-petition indebtedness, obligation or liability incurred by the Debtor to DIP Lender under the DIP Loan Documents prior to the effective date of such action shall be governed in all respects by the original provisions of this Interim Financing Order, and DIP Lender shall be entitled to all of the rights, remedies, privileges, benefits and priorities granted herein and pursuant to the DIP Loan Documents, with respect to any such indebtedness, obligation or liability.

465922v3

1    ### 22.    **Challenges to Liens and Claims.**

2        (a)    The Debtor has represented, acknowledged, stipulated and agreed

3    that all liens and security interests of Pre-Petition Lender in the Pre-Petition Lender

4    Collateral are legal, valid, binding, enforceable, properly perfected and not avoidable or

5    subject to subordination, that the Pre-Petition Debt is allowable as a fully secured claim

6    against Debtor, and that the Pre-Petition Debt is valid, legal, binding and enforceable and

7    not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of

8    subordination, claim of re-characterization, claim of avoidance of any nature, attack or

9    challenge under the Bankruptcy Code, other applicable non-bankruptcy law or otherwise.

10        (b)    In consideration of DIP Lender's agreement to provide Credit

11    Extensions pursuant to the DIP Loan Documents, the Debtor has waived and shall be

12    barred from (i) challenging the amount, validity, extent, perfection or priority of or seeking to

13    set aside, avoid, offset or subordinate any of the Pre-Petition Debt or any liens or security

14    interests of Pre-Petition Lender in the Pre-Petition Lender Collateral and (ii) from asserting

15    any other claims or causes of action against Pre-Petition Lender including, without

16    limitation, claims for lender liability or pursuant to Bankruptcy Code sections 105, 510, 544,

17    547, 548, 549 or 550. Notwithstanding the foregoing, any party-in-interest (other than the

18    Debtor) with the requisite standing to do so, and any Official Committee hereafter

19    appointed shall be permitted to (i) investigate (subject to the limitation set forth in

20    subparagraph (a) of paragraph 14) and challenge, in accordance with the Federal Rules of

21    Bankruptcy Procedure, the validity, enforceability, priority, perfection or amount of the Pre-

22    Petition Debt or Pre-Petition Lender's liens on the Pre-Petition Lender Collateral in respect

23    thereof, and (ii) otherwise assert any claims or causes of action against Pre-Petition Lender

24    or on behalf of the Debtor's estate, which shall not be filed prior to the Final Hearing.  At the

25    Final Hearing the Court shall establish a deadline for the filing of any such claims or causes

26    of action, which shall be referred to herein as the **"Investigation Period"**. At the Final

27    Hearing the Court shall determine whether or not it is prepared to approve Section 8.1(n) of

28    the DIP Loan Agreement, which makes it an Event of Default if any such challenge is

-31-

465922v3

1  initiated.  If no such challenge is filed during the Investigation Period, (1) the repayment of

2  the Pre-Petition Debt shall be deemed final and indefeasible, not subject to subordination

3  and otherwise unavoidable, (2) the Pre-Petition Debt shall constitute an allowed claim of

4  Pre-Petition Lender (without the necessity of the filing of proofs of claim by Pre-Petition

5  Lender), not subject to subordination and otherwise unavoidable, for all purposes in the

6  Chapter 11 Cases and any subsequent chapter 7 case, (3) Pre-Petition Lender's liens on

7  the Pre-Petition Lender Collateral shall be deemed legal, valid, binding, perfected, not

8  subject to defense, counterclaim, offset of any kind, subordination and otherwise

9  unavoidable, and (4) Pre-Petition Lender, the Pre-Petition Debt, the Pre-Petition Loan

10  Documents and the Pre-Petition Lender's liens on the Pre-Petition Lender Collateral shall

11  not be subject to any other or further challenge by any party-in-interest seeking to exercise

12  the rights of the Debtor's estate, including without limitation, any successor thereto. The

13  filing of any such adversary proceeding by any Committee or any party-in-interest, shall

14  constitute an immediate Event of Default under this Interim Financing Order and the DIP

15  Loan Documents.

16      **23.**    **Successors and Assigns.**  The provisions of this Interim Financing

17  Order shall be binding upon all parties-in-interest in this Chapter 11 Case, including,

18  without limitation, DIP Lender, the Debtor and their respective successors and assigns, and

19  shall inure to the benefit of DIP Lender, Pre-Petition Lender, the  Debtor and their

20  respective successors and assigns, including, without limitation, any trustee, examiner,

21  responsible officer, estate administrator or representative, or similar person appointed in a

22  case for the Debtor under any chapter of the Bankruptcy Code or in any successor

23  proceeding, whether under the Bankruptcy Code or otherwise. In no event shall DIP Lender

24  have any obligation to make Credit Extensions to any chapter 7 or chapter 11 trustee

25  appointed or elected for the estate of the Debtor, absent DIP Lender's prior written

26  agreement.

27      **24.**    **Binding Nature of Agreement.**  Each of the DIP Loan Documents to

28  which the Debtor will become a party once finally approved by DIP Lender shall constitute

-32-

465922v3

1  legal, valid and binding obligations of the Debtor, enforceable in accordance with their

2  terms. The DIP Loan Documents shall be executed and delivered to DIP Lender by the

3  Debtor. The rights, remedies, powers, privileges, liens and priorities of DIP Lender and

4  Pre-Petition Lender provided for in this Interim Financing Order and in any other DIP Loan

5  Document shall not be modified, altered or impaired in any way by any subsequent order

6  (including a confirmation order or an order that extends any time period set forth herein) or

7  by any plan of reorganization or liquidation in this Chapter 11 Case or in any subsequent

8  case under the Bankruptcy Code unless and until (a) with respect to DIP Lender, the Post-

9  Petition Debt has been indefeasibly paid, in full, in cash and the DIP Loan Documents are

10  terminated in accordance therewith; and (b) with respect to the Pre-Petition Lender, the

11  Pre-Petition Debt has been indefeasibly paid, in full, in cash and the Pre-Petition Loan

12  Documents are terminated in accordance therewith.

13      **25.    Priority of Terms.**  Once the parties sign and deliver the DIP Loan

14  Agreement, to the extent of any conflict between or among the express terms or provisions

15  of any of the Pre-Petition Loan Documents, the DIP Loan Documents, the DIP Financing

16  Motion, any order of this Court, or any other agreements, the terms and provisions of this

17  Interim Financing Order shall govern and control.

18      **26.    No Waiver.**  This Interim Financing Order shall not be construed in any

19  way as a waiver or relinquishment of any rights that DIP Lender or Pre-Petition Lender may

20  have to bring or be heard on any matter brought before this Court. Pre-Petition Lender

21  reserves all rights and remedies that it has against SCSI and nothing contained in this

22  Order or the DIP Loan Documents shall constitute a waiver or relinquishment of any right or

23  remedy or a release of any collateral interest that Pre-Petition Lender has in any assets of

24  SCSI, including without limitation Pre-Petition Lender's absolute right to immediately

25  directly collect all of SCSI's accounts receivable.  None of the loan proceeds under the DIP

26  Loan or Cash Collateral shall be used to benefit SCSI or transferred to or for the benefit of

27  SCSI.

28

-33-

465922v3

27.   **Final Hearing. The Final Hearing shall be held in this Court at 10:00 a.m. (Pacific Standard time), on November 28, 2007** (as the same may be adjourned or continued by the Court). If no objection to the DIP Financing Motion or this Interim Financing Order is timely filed and asserted at the Final Hearing, then this Interim Financing Order shall continue in effect in accordance with its terms subject to such modifications as the Court may make at the Final Hearing and that are acceptable to DIP Lender. If any or all of the provisions of this Interim Financing Order are modified, vacated or stayed as the result of any objection timely filed and asserted at the final Hearing, then, without limiting the provisions of this paragraph, any Post-Petition Debt incurred prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Financing Order, and DIP Lender shall be entitled to all of the protections afforded under Bankruptcy Code section 364(e) and to all the rights, remedies, privileges, and benefits, including, without limitation, the liens granted to DIP Lender in the DIP Collateral and superiority claim status granted herein and pursuant to the DIP Loan Documents with respect to all such Post-Petition Debt.

28.   **Adequate Notice; Notice of Final Hearing.** The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the Local Rules under the circumstances, no further notice of the request for relief granted at the Interim Hearing is required. Promptly after the entry of this Interim Financing Order, the Debtor shall mail, by first class mail, a copy of this Interim Financing Order and a notice of the Final Hearing, to the Noticed Parties and shall file a certificate of service regarding same with the Clerk of the Court. Such service shall constitute good and sufficient notice of the Final Hearing.

29.   **Pleading Deadlines.** Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity all facts relied upon and all grounds therefor, and filed with the Court (with a copy to Chambers) on or before 5:00 p.m. (Pacific Standard time) on November 16, 2007 (the **"Objection Deadline"**), and concurrently served so as to be actually received by the Objection Deadline by counsel for

-34-

465922v3

1  the Debtor, Klee, Tuchin, Bogdanoff & Stern LLP 1999 Avenue of the Stars, 39th floor,

2  Los Angeles, CA 90067, Attention: Thomas E. Patterson, Esq., and (b) counsel for the DIP

3  Lender, Stutman, Treister & Glatt PC 1901 Avenue of the Stars, 12th Floor, Los Angeles,

4  California 90067-6013, Attention: Eric D. Goldberg, Esq.  Unless an objecting party or its

5  counsel appears at the Final Hearing to assert the basis for such objection before the

6  Court, such objection shall be deemed to have been waived and abandoned by such

7  objecting party.  Any response to any such objection to the relief sought at the Final

8  Hearing shall be made in writing setting forth with particularity all facts relied upon and all

9  grounds therefor, and filed with the Court (with a copy to Chambers) on or before noon

10  (Pacific Standard time) on November 26, 2007 (the **"Reply Deadline"**), and concurrently

11  served so as to be actually received by the Reply Deadline by counsel for the objecting

12  party.

13    **30.  Entry of Order.**  This Interim Financing Order shall take effect

14  immediately upon execution hereof, notwithstanding the possible application of Bankruptcy

15  Rules 4001(a)(3), 6004(g), 7062. 9014, or otherwise, and the Clerk of the Court is hereby

16  directed to enter this Interim Financing Order on the Court's docket in these Chapter 11

17  Cases.

18  _____
    UNITED STATES BANKRUPTCY JUDGE

19  APPROVED AS TO FORM AND CONTENT

21  _____

22  Thomas E. Patterson
    KLEE, TUCHIN, BOGDANOFF & STERN LLP
23  Counsel to the Debtor

25  _____/s/_____

26  Eric D. Goldberg
    STUTMAN, TREISTER & GLATT
27  PROFESSIONAL CORPORATION
28  Counsel to CapitalSource

-35-

465922v3

## EXHIBIT A -- PERMITTED ENCUMBRANCES

| Vendor | Vendor Info | Type of Agreement | Description |
|---|---|---|---|
| Med One Capital Funding LLC | Robb Stevens 6965 Union Park Center, Suite 400, Midvale, UT 84047 (800) 248-5882, fax (800) 468-5528 | Lease Agreement - Equipment | Equipment rental - Alaris Medical Systems |
| Dade Behring Finance Co. LLC | Allan C. Parker 1717 Deerfield Rd., Suite 2102, P.O. Box 778, Deerfield, Il 60015-0778 (800) 948-3234 | Lease Agreement - Equipment | CA-1500 Standard and CA-560 Coagulation Analyzer |
| VGM Financial Services | Jeff Rathjen 1111 West San Marnan Dr., Waterloo, IA 50701 (877) 689-1401 | Lease Agreement - Equipment | Surgical Equipment Lease with $1 purchase option |
| Kronos Inc. | Lindsay Schuyler 297 Billerica Rd., Chelmsford, MA 01824 (978) 947-4765 | Lease Agreement - Equipment | Employee time clocks |
| Stryker Capital | 5900 Optical Court, San Jose, CA 95138 | Lease Agreement - Equipment | Endoscopy equipment lease |
| Xerox | Tania Albopy 1801 Avenue of the Stars, Suite 550, Los Angeles, CA 90067 (310) 203-5444, ext. 18, fax (310) 203-5484, Service (800) 821-2797 | Lease Agreement - Equipment | Printer and Copy Machine Leases |
| American Protection Industries, Inc. | 701 E. Hyde Park Blvd., P.O. Box 2222, Inglewood, CA 90305-0222 | Lease Agreement - Equipment | Alarm System for 8501 S. La Cienega, Inglewood, CA 90301 |

EXHIBIT A
PAGE 36

**NOTE TO USERS OF THIS FORM:**
*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do **not** file this form as a separate document.*

| In re<br>BROTMAN MEDICAL CENTER, INC. | CHAPTER    11 |
|---|---|
| Debtor. | CASE NUMBER    07-19705-BB |

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
# AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1.    You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify)*:

INTERIM ORDER (1) AUTHORIZING DEBTOR-IN-POSSESSION TO OBTAIN POST-PETITION FINANCING; (2) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY STATUS; (3) AUTHORIZING USE OF CASH COLLATERAL; (4) PROVIDING ADEQUATE PROTECTION; (5) SCHEDULING A FINAL HEARING; AND (6) MODIFYING THE AUTOMATIC STAY

Was entered on *(specify date):*        NOV 0 5 2007

2.    I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date):*        NOV 0 5 2007

Dated:        NOV 0 5 2007

JON D. CERETTO
**Clerk of the Bankruptcy Court**

By: _____
*Deputy Clerk*

## SERVICE LIST

Office of the U.S. Trustee
Attn:  Russell Clementson/Gary Baddin/Kenneth Lau
725 S. Figueroa St., Ste. 2600
Los Angeles, CA  90017

CapitalSource Finance LLC
Attn:  Legal Department - Restructuring Group
4445 Willard Avenue, 12th Floor
Chevy Chase, MD  20815

Stutman Treister & Glatt P.C.
Attn:  Eric Goldberg, Esq.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA  90067

Klee, Tuchin, Bogdanoff & Stern LLP
Attn:   Courtney E. Pozmantier, Esq.
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA  90067